Harper, Ch.
At the sitting of the Court in January, 1830, a rule was issued on behalf of J'. W. Gray, who had lately been appointed Commissioner of the Court, requiring Thomas Hunt, Esq., the late Commissioner, to show cause why he had not turned over to his successor in office, “ the official papers, &c.” in his hands. Mr. Hunt showed for cause, as I understand, that he was still legally the incumbent of the office, and entitled *476 to retain it. Chancellor DeSaussure decreed against bis claim to the office; but, as an appeal from the decision on that claim was expected, ordered prospectively, that' if the final decision should be against Mr. Hunt, he should, with all convenient speed, deliver over all the papers and documents in his hands, belonging to the office. Chancellor DeSaussure’s decree was affirmed on appeal, and part of the official papers and ‘funds delivered over accordingly. At the sitting in May, 1830, a rule was granted, requiring Mr. Hunt to show cause why he had not turned over the official papers, funds, «fee. stated in his “ report of funds,” filed the 29th January, 1830, to be in his hands, agreeably to the previous order; of'which funds, only some specified by reference to the report, had been turned over. To this rule, no return was made. It is true, that, at the return of the rule, Mr. Hunt appeared and stated verbally, some grounds on which he conceived himself entitled to retain certain of the papers and funds in his hands. This, however, could not be received as a return, and a day was appointed, the last of the sitting, for a return in writing to be made. On the day appointed, the counsel of Mr. Hunt appeared, and, I believe, offered a statement in writing ; but, if so, it was not sworn to, and being objected to, was not received. For want of any cause shown, it was ordered that the last rule be made absolute, and “that the said Thomas Hunt be attached, unless he comply with the said rule.”
A notice of appeal from this order was given; in consequence of which, the Register declined to sign an attachment in pursuance of the order. The present application is for an order to the Register to sign the attachment; founded on an affidavit of Mr. Gray, that certain of the funds and papers have not been turned over.
Independently of any consideration of the appeal which has been taken, I doubted whether the present application was not irregular, as being unnecessary. The order of Court itself provides that an attachment shall issue, if it be not complied with. But the order is, that Mr. Hunt shall turn over the funds and *477 papers, and, provisionally, if he shall not comply, that an attachment shall issue. Perhaps it was proper, that before issuing an attachment, he should be called upon to show whether he had complied or no. But, no injury could be done by proceeding in this manner, and I shall proceed to consider the merits of the motion.
The reason alleged against the granting of the motion is, that an appeal has been taken, which operates a suspension of the order for attachment. After considering the matter as maturely as I can, I am compelled to come to the conclusion, that an order of this sort is not the subject of appeal, or if it be, that the appeal will not suspend the execution of the order. As observed -by Chancellor Kent, in the case of Green and Winter, 1 Johns. Ch. 80, “there must, of necessity, exist a power and discretion in the Chancellor, as a like power exists in a Court of Law, (2 T. R. 78,) to determine, in the first instance, upon the operation of the appeal; as, whether it be brought upon an order from which an appeal will lie, and upon what points, and to what extent the appeal operates as, a stay of proceedings.” Considerable difficulty has been found in deciding what orders are, or are not, the subject of appeal. With respect to orders made in the course of a cause, it has been laid down, that interlocutory orders, such as do not affect the final decision of the cause, cannot be appealed from, though they may occasion inconvenience to the party in the mean time. This, however, was not an order made in any cause, but directed to one who stood in the relation of an officer of the Court, prescribing the execution of his duty to the Court. It, is not so properly a judicial order as an administrative one. With the exception of a few instances in our own Courts, I have found no case of appeal from such an order. The case chiefly relied on, is that of The State vs. The Sheriff of Charleston District, (1 Mill, 150,) in which the Constitutional Court entertained an appeal from an order making a rule absolute against the Sheriff, for the paying over of money in his hands. In that case, Judge Bay adverts to the instances in which he supposes an appeal would not *478 lie. Speaking of the right'of appeal, he says, “it appears to me to be circumscribed by nothing but such circumstances as are absolutely necessary for the despatch of business in the due course of the administration of justice ; and without which, the law could not be speedily and duly executed. To suffer appeals, in such cases, would be to destroy the energy of the law in every stage, and to defeat the very ends and designs for which all laws were formed. Under this head, I would be understood to mean and intend all legal proceedings in a Court of Justice, before verdict and judgment; all refusals in persons attendant on a Court of Justice to do and perform their duties, and in paying proper obedience to the rules of Court,” and he refers, generally, to the head of contempts. Now, the order in that case was grounded on a supposed contempt of the Sheriff in not paying over the funds in his hands. As the funds were claimed by different parties, the Court must have gone upon the distinction, that although in form, it was a proceeding for contempt, it was in substance and effect, a determination of private rights. This would not apply to the case of a Sheriff who should refuse to make any return. at all. The present order was to turn over funds and papers pertaining to the office of Commissioner in Equity. This seems to me to come within the class of cases referred to by Judge Bay, in which it is absolutely necessary for the due administration of public justice, that the right of appeal should be denied. It is necessary for the public, that the documents and funds pertaining to the Commissioner’s office, should be in that office, accessible to the public, and subject to the control of the Court. I cannot make distinctions as to how large a portion of the funds and documents are detained, or what degree of inconvenience the public may suffer from their not being in the proper office. Suppose the case of a Register going out of office, and refusing to turn over any papers. Must the business of the country be suspended, till he can litigate his right to do so on appeal ? I do not perceive that any ultimate injustice can be done by this decision. As I before observed, such an order is not an adjudication. If Mr. *479 Hunt is legally entitled to any emoluments arising from the cases in his hands, and these shall be received by the new Commissioner, an action may be brought to recover them.
But, if I supposed that an appeal would lie, I should still think that the order ought to be carried into effect. In England the practice is perfectly well settled, that an appeal from the Chancellor to the House of Lords, does not suspend the execution of a decree, unless a special order for that purpose be made by the House or the Chancellor. The Warden and Minor Canons of St. Paul’s vs. Morris, 9 Ves. 316 ; Gwynn vs. Lethbridge, 14 Ves. 585; Waldo vs. Caley, 16 Ves. 206 ; Willan vs. Willan, 16 Ves. 216. In New-York, where the right of appeal is allowed almost in the terms of our Statute of 1808, (see Blake’s Chancery, 174,) a different rule is adopted, to wit, that further proceedings are suspended by appeal, unless a special order be made that the cause shall go on. ■ In general, the English law is ours, and I can perceive nothing in our statute inconsistent with the rule I have referred to. Yet, the practice has been so uniform, to suspend the execution of decrees until the appeal shall be determined, that I should respect it, though there has been no adjudication on the subject, so far as I know. Appeals in this country are so quickly determined, that little inconvenience can arise from suspending the execution. Yet I cannot conceive, that this practice will warrant me in saying, that in no case, where the most irreparable injury is likely to be occasioned by the suspension, can a decree be enforced pending an appeal. This is not the case of a decree, but of an order to an officer of the Court; which, according to the views I have taken, public interest and the due administration of justice require to be promptly enforced. If the appeal shall be sustained, no material injury can be done to Mr. Hunt. The order of the Court can, at once, put him in statu quo ; by directing the present Commissioner to refund and restore to him whatever he may be entitled to receive.
Certain statements have been submitted to me, on the part of Mr. Hunt, to show the grounds on which rests his claim to re *480 tain some of the funds and papers in his hands. I cannot consi-' der these now. They ought to have been presented in his return to the rule, during the sitting of the Court. I have no authority to rescind an order made by the Court, though it is my duty to make other orders which may be necessary to carry such into effect. I do not think I have a legal discretion to suspend the order. I should find it difficult to draw any conclusion from the statements, if I thought myself at liberty to consider them; nor do I understand that they have been submitted to the opposite party.
The irregularity of the order itself is relied on as a ground for suspending its execution. The alleged irregularity is, that the order directs an attachment to issue, when the rule had not required Mr. Hunt to show cause why an attachment should not issue. The process of attachment is the ordinary means by which this Court enforces its orders. The order in question is, that Mr. Hunt shall turn over the papers and funds in his hands. If it had stopped there, and said nothing about an attachment, the motion would have been, of course, to grant the attachment, upon a showing that the order had been disobeyed. I cannot suppose that the order can be rendered irregular by the express insertion of that which the law would have implied. The order to an officer of the Court, to show cause why he has not obeyed a former order, is of course a rule to show cause why he should not be attached. The order of Chancellor DeSaussure had already directed Mr. Hunt to transfer “all the papers and documents” in his hands. He was called upon to show cause why he had not obeyed that order. No cause being shown, it would have been perhaps regular that an attachment should have been ordered at once, without any further order to turn over the papers. I should have little doubt as to this, but that the order of May, 1830, includes “funds,” as well as papers and documents.
It is therefore ordered, that the Register sign the writ of attachment demanded by the Commissioner, James W. Gray.